Casey R. Fronk (Illinois Bar No. 6296535)
fronckc@sec.gov
Tracy Combs (California Bar No. 298664)
combst@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel:  (801) 524-5796
Fax: (801) 524-3558

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>MINE SHAFT BREWING LLC, a Delaware limited liability company, TIMOTHY A. NEMECKAY, an individual, JOHN A. LOGAN, an individual, and CHARLIE V. WHITTINGTON, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>Case No.: 2:21-cv-00457-DAO<br><br>Judge Daphne A. Oberg |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants Mine Shaft Brewing LLC ("Mine Shaft"), Timothy A. Nemeckay ("Nemeckay"), John A. Logan ("Logan"), and Charlie V. Whittington ("Whittington") (collectively, the "Defendants") alleges as follows:

## SUMMARY OF THE ACTION

1.      This case arises out of the unregistered and fraudulent offering of securities by Mine Shaft Brewing LLC, its principal, recidivist Nemeckay, and its executives, Logan and Whittington.

-1-

2. Commencing on or about December 2013, Nemeckay, Logan, and Whittington (the "Individual Defendants") offered and sold equity interests in Mine Shaft, without being registered as, or associated with, broker-dealers, to over 100 investors located throughout the United States. Their offer and sale of these equity interests raised at least $2.7 million.

3. Nemeckay was barred by the Commission in 2016 from associating with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization and from participating in any penny stock offering. He was also barred by the State of Utah in 2014 from acting as an agent for any issuer soliciting investor funds in Utah (and ordered to pay $350,000). Nemeckay violated these bars in connection with Mine Shaft.

4. Nemeckay, Logan, and Whittington told investors that the investors' funds would be used to develop the "Mine Shaft Brewery," which included building the brewery, restaurant, and retail store. Investors were told that approximately 70 percent of the invested funds would be used to acquire brewery and restaurant equipment and to purchase a building or make tenant improvements to an existing building, and that the remaining 30 percent of invested funds would be used for inventory and business expenses.

5. Instead, Nemeckay used his personal business, Nemeckay Group Inc., as a pass through to pay his own personal expenses, including paying his restitution obligations to victims from his prior securities fraud scheme. In all, Nemeckay took approximately $1.7 million (63 percent) of investor funds for his own personal use.

6. Of the remaining investor funds, approximately 10 percent were used to make Ponzi payments to investors and 10 percent were used to compensate Whittington and Logan.

7. In all, only approximately $550,000, or less than 17 percent of investor funds, were used as disclosed to investors.

8. Investors were told that the company would be "well managed by great people." However, Nemeckay, Logan, and Whittington failed for years to disclose to investors Nemeckay's prior state and federal securities bars, and, when they did finally make that disclosure, falsely claimed that Nemeckay was a whistleblower to the Commission who was mistreated.

9. At all relevant times, Defendants Nemeckay, Logan, and Whittington were not registered as brokers or dealers with the Commission nor associated with a broker or dealer registered with the Commission.

10. By engaging in this conduct, as further described herein, Defendant Mine Shaft violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5].

11. By engaging in this conduct, as further described herein, Defendant Nemeckay violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Sections 10(b), 15(a)(1), and 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. §§ 78j(b); 78o(a)(1); 78o(b)(6)(B)(i)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5].

12. By engaging in this conduct, as further described herein, Defendant Logan violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Sections 10(b) and

15(a)(1) of the Exchange Act [15 U.S.C. § 78j(b); 78o(a)(1)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5].

13. By engaging in this conduct, as further described herein, Defendant Whittington violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. § 78j(b); 78o(a)(1)]; and Exchange Act Rules 10b–5(a) and 10b–5(c) [17 C.F.R. § 240.10b–5(a); 240.10b–5(c)].

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v]; Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa]; and 28 U.S.C. § 1331.

15. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. § 77t(b); 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. § 78u(d); 78u(e)] to enjoin such acts, practices, and courses of business, and to obtain civil money penalties and such other and further relief as this Court may deem just and appropriate.

16. Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

17. Venue for this action is proper in the District of Utah pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the transactions, acts, practices, and/or courses of business alleged in this

Complaint took place in this district and because certain of the Defendants reside in and transact business in this district.

18. Defendants' conduct took place in connection with the offer, purchase and/or sale of investment contracts issued by Mine Shaft, which are securities.

## DEFENDANTS

19. **Mine Shaft Brewing, LLC** is a Delaware limited liability company, registered as a foreign LLC to transact business in Utah with a principal place of business in Park City, Utah. Mine Shaft purportedly engages in the promotion of malt liquor, beer, and hard cider with plans to build a brewery and restaurant. Mine Shaft identifies its structure as a manager-managed LLC with Nemeckay as its only manager.

20. **Timothy Andrew Nemeckay**, 61, is the sole and managing member of Mine Shaft and represents himself as Mine Shaft's Founder, President, Secretary, and Board Manager. Nemeckay is a resident of Park City, Utah. Nemeckay is also an officer of Nemeckay Group. On July 7, 2014, Nemeckay entered into a Stipulation and Consent Order with the Utah Division of Securities for violations of the Utah Uniform Securities Act, was fined $350,000, was barred from associating with a broker-dealer, and barred from becoming licensed. On July 25, 2016, Nemeckay was sanctioned by the Commission in a corresponding action wherein he was barred from association with any broker, dealer, investment advisor, municipal securities dealer, municipal advisor, transfer agent, or national recognized statistical rating organization and participating in any penny stock offering. (*See* Securities Exchange Act of 1934 Release No. 78411 (July 25, 2016). At no time has Nemeckay been licensed in the securities industry.

21. **John Allen Logan**, 77, is listed as an Executive Officer in Mine Shaft's Form D filing and is represented in various PPMs and marketing materials as the Chief Financial Officer

and as a manager on the Board of Managers. Logan is a resident of Utah. At no time has Logan been licensed in the securities industry.

22.     **Charles Vernon Whittington**, 54, is listed as an Executive Officer in Mine Shaft's Form D filing and is represented as a founding member and on marketing materials as the senior vice president of business development. Whittington is a resident of Georgia and a former resident of Utah. Whittington formerly worked as a professional golfer. At no time has Whittington been licensed in the securities industry.

## STATEMENT OF FACTS

23.     Beginning as early as 2013, Defendants sold Mine Shaft securities to more than 100 investors across the nation and raised approximately $2.7 million.

24.     Mine Shaft claims to be a company engaged in the promotion of malt liquor, beer, and hard cider with plans to build a brewery and restaurant in Park City, Utah, which was later changed to Santa Clarita, California with a line of hard seltzer waters called Cali Orchards.

25.     Defendants, to raise capital for the business, offered financial instruments referred to as Interests and promissory notes for the purpose of developing the brewery and restaurant.

26.     Defendants Nemeckay, Logan, and Whittington, who were not registered with the Commission as brokers nor associated with entities that were registered with the Commission as brokers, sought investors for Mine Shaft.

27.     Defendants Nemeckay, Logan, and Whittington offered potential investors convertible promissory note securities, which promised 8 percent interest per annum paid in five years, and Series A Membership Interest securities, which promised 8 percent interest per annum with an exercisable warrant to purchase additional Interests at a discount. Interests were offered

through online platforms such as Equitynet, Crowdfunder, Angel.com, and through videos, public press releases, personal referrals, and direct sales.

28. In connection with the offer and sale of Mine Shaft securities, Defendants engaged in the making written misrepresentations and omissions in Mine Shaft Documents which were disseminated to investors and potential investors to induce them to purchase Mine Shaft securities.

29. Defendants provided documents concerning the Mine Shaft Securities Offering including an investor "pitch deck", Private Placement Memorandums ("PPMs)", subscription agreements, newsletters, and press releases.

### *False and Misleading Private Placement Memorandums*

30. Nemeckay, as the Manger of Mine Shaft, possessed ultimate authority as to the content of the PPMs and the PPMs' distribution, directly and/or indirectly, to prospective investors.

31. Mine Shaft used at least seven different Private Placement Memoranda ("PPM") to promote its investments. PPMs range in offering $400,000 in Convertible Promissory Notes to $14,990,000 in Series A Membership Interests to an unspecified number of unspecified "Securities."

32. The PPMs were distributed to prospective investors by Nemeckay, Logan, and Whittington.

33. Each of the PPMs concerning the Mine Shaft Securities Offering contained material misstatements and omissions, including the following:

a. Every PPM identified Logan as a Chief Financial Officer, touting his experience as a CPA, CEO and CFO. This mislead investors to believe that Logan was overseeing and managing the financial affairs of Mine Shaft, which he did not.

b. The 2015 and 2016 versions of the PPM failed to disclose that Nemeckay had been barred in 2014 by the State of Utah from associating with a broker-dealer, and had been barred from becoming licensed and fined $350,000.

c. The May 16, 2018 version of the PPM failed to disclose that Nemeckay had been barred in 2016 by the Commission from associating with any broker, dealer, investment advisor, municipal securities dealer, municipal advisor, transfer agent, or national recognized statistical rating organization and from participating in any penny stock offering.

d. The August 14, 2018 version of the PPM included a disclosure in a section called "Privacy Policy and Disclosure" (later renamed "Privacy Policy and Regulatory Disclosure" beginning with the December 1, 2019 PPM).

e. The disclosure in both the August 14, 2018 and 2019 versions of the PPM stated:

The Utah Division of Securities ordered Mr. Nemeckay in twenty fourteen not to engage in brokerdealer, investment advisor and similar activities in Utah. In twenty sixteen, Mr. Nemeckay and the Securities and Exchange Commission entered into an agreement whereby Mr. Nemeckay agreed not to engage in broker-dealer, investment advisor and similar activities. These relate to assistance Mr. Nemeckay previously provided to a Utah-based company. Mr. Nemeckay has provided information to the SEC regarding his involvement with Mine Shaft's fundraising efforts and the SEC has expressed no concern. On November sixth twenty seventeen Mr. Nemeckay received a request to vacate from the Commission for the above matter.

34. This disclosure was false and materially misleading as it suggested that the Commission had reviewed the PPM and offering documents and that the Commission approved the offering as well as Nemeckay's involvement in it, when it had not.

35. This disclosure was also incomplete and materially misleading because it did not disclose that Nemeckay had been barred by the Commission from participating in any offering of a penny stock.

36. This disclosure was also incomplete and materially misleading because it did not explain the circumstances of the process for vacating Commission bars pursuant to *Bartko v. SEC*, which mislead investors to believe that the Commission had vacated its 2016 Order, when it had not done so.

37. In addition, the PPMs distributed to investors for the Mine Shaft Offering did not disclose the amounts Nemeckay, Logan, and Whittington anticipated receiving in connection with the offering. Such omissions were materially misleading to investors.

38. At the time the PPMs were drafted and disseminated to investors, Defendants knew or were reckless in not knowing that the statements contained therein, as set forth in Paragraphs XX to XX, above, were false or misleading, and/or that they contained omissions.

*Misrepresentations and Omissions*

39. During or around June 2018, Defendants were soliciting investors to invest in the Mine Shaft Offering and were communicating with investors and potential investors.

40. In response to investor questions, Nemeckay sent a series of materially misleading email messages.

41. Specifically, on June 11, 2018, Nemeckay sent an email to an investor claiming,

"[O]ur Mine Shaft Brewing docs have been inspected inside and out by the SEC and we / were [sic] given the green light to raise capital and make MSB successful."

42. This statement was false and misleading as the Commission had not "inspected" the Mine Shaft offering documents nor had the Commission "given the green light" to Mine Shaft to raise capital.

43. In that same email, Nemeckay told the investor that he and his attorney were "whistleblowers" to the Commission.

44. This statement was false. Neither Mr. Nemeckay nor his attorney was a whistleblower to the Commission.

45. At the time Nemeckay sent the emails, he knew or was reckless in not knowing that the statements contained in those emails were false and/or misleading.

46. Defendants told investors the return would be paid out in 3 to 5 years after the brewery launched and that Mine Shaft was getting ready to move forward on production soon.

47. Despite continually failing to meet projections, Nemeckay, Whittington, and Logan repeatedly assured investors that success was imminent.

48. In reality, there was no definitive date set for production and Mine Shaft did not build or break ground on a restaurant or brewery, nor did it brew, bottle or produce any beverages to sell to the public.

*Lulling Through Investor Newsletters*

49. Beginning in 2015, Defendants sent periodic newsletters to investors that contained numerous statements regarding the plans and progress of the development of the brewery.

50.     The July 2015 Newsletter claimed that Mine Shaft "ha[s] now secured investment commitments for just under $3M, and we have some key meetings scheduled with potentially significant investors. In addition we have various developers courting MSB."

51.     The October 2016 Newsletter touted all of the benefits that Mine Shaft investors would receive. Specifically, investors were promised:

> Every Investor Receives Series A Preferred Shares Right of refusal on additional rounds 8% Annual Preferred Interest Mine Shaft Brewing's Black Card Club Membership offers exclusive access and opportunities like no other beer or wine clubs: • First access to limited production beers and ciders at the brewery. • Special opportunities to purchase exclusive releases. • Advance notice and special pricing on brewery events, including head brewer dinners. • Pre-sale all-access purchase opportunities for our Summer Concert Series and other events. • Discounts on dining and merchandise. • Dedicated Concierge Service to assist with purchases, event information, dinner reservations and information about our beers and ciders. • Exclusive opportunities for dinner along with game/event tickets with our athlete ambassadors: NHL, MLB, MLS, PGA, Olympic Medalist. This is exclusive access meant to create lifelong memories.

52.     Defendants also used the newsletters to discourage investors from cooperating with an investigation by the State of Utah, and mischaracterized that investigation.

53.     The November 2019 newsletter stated that "A very small number of our investors have been vocal to us in opposition to the move [from Park City to California]. It is our understanding that one of them may have gone so far as to make a complaint to Utah state securities regulators, so please do not be alarmed if you receive communication in that regard. Despite its official nature there is no requirement that you respond."

54.     Defendants' used the newsletters to lull investors into believing that their investments were being properly spent and that Mine Shaft's operations were successful.

55.     At the time the newsletters were sent, Defendants knew or were reckless in not knowing that the statements contained in the Newsletters were false or misleading, and/or that they contained omissions.

***Fraud in Connection with Mine Shaft's Forms D***

56. In connection with the Mine Shaft Securities Offering, Nemeckay caused Mine Shaft to file various Forms D with the Commission on or around April 27, 2016 and November 14, 2019, which also contained material misstatements and omissions concerning the offering, including the following:

57. Section 16 of the 2016 Form D concerning "Use of Proceeds" listed $0 as the "amount of the gross proceeds of the offering that has been or is proposed to be used for payments to any of the persons required to be named as executive officers, directors, or promoters" when, in reality, significant funds were paid to Nemeckay, Logan and Whittington, who were each identified as "Executive Officers" of Mine Shaft.

58. Section 16 of the 2019 Form D concerning "Use of Proceeds" listed $360,000 as the "amount of the gross proceeds of the offering that has been or is proposed to be used for payments to any of the persons required to be named as executive officers, directors, or promoters" when, in reality, more than $1.7 had been paid to Nemeckay, Logan and Whittington, who were each identified as "Executive Officers" of Mine Shaft.

59. Likewise, Section 16 of the 2019 Form D concerning "Use of Proceeds" contained the statement "Approximately 20% of proceeds has been paid as consulting fees to such persons since 2015" when, in reality, more than 62 percent of proceeds had been paid to Nemeckay, Logan and Whittington.

60. In regard to the LFS Funding Securities Offering, no registration statement was in effect, no registration statement had been filed with the Commission, and no exemption from registration validly applied.

61. At the time the Form Ds were filed with the Commission, Mine Shaft and Nemeckay knew or were reckless in not knowing that the statements contained in the Form Ds were false or misleading, and/or that they contained omissions.

### *Misuse of Investor Funds*

62. Defendants represented to investors that over 70 percent of investor funds would be use towards brewery and restaurant equipment, tenant improvements, and inventory.

63. Defendants spent less than $550,000 on business start-up costs including marketing costs (for soliciting investors), travel, and legal fees. The bulk of investor funds were used for Defendants' personal use.

64. Mine Shaft's bank records show that Nemeckay was the sole signatory on the business bank account and that Mine Shaft's only source of income was from investor funds.

65. At least $255,000 of investor funds was paid to Whittington.

66. At least $22,600 of investor funds was paid to Logan.

67. Nemeckay transferred at least $1.7 million of investor funds from Mine Shaft's bank account to the Nemeckay Group, then transferred those funds to his and his wife's personal bank account, where the funds were spent for personal use.

68. At least $277,000 of funds collected from new investors was used to make purported note payments to prior investors.

69. Nemeckay, through the Nemeckay Group, used at least $312,000 of investor funds to pay restitution to investors for Nemeckay's prior State of Utah securities violation.

70. Defendants failed to disclose to investors that investor funds would be used for the personal benefit of Nemeckay, Logan, and Whittington.

## UNREGISTERED OFFER AND SALE

71. Although Mine Shaft submitted to the Commission Forms D claiming a 506(b) exemption, Mine Shaft was immediately disqualified from reliance on the exemptions and safe harbors provided by Regulation D, Regulation A, and Regulation CF (Crowdfunding) due to Nemeckay's status as a bad actor pursuant to Rule 506(d)(1) of Regulation D [17 C.F.R. § 230.506(d)(iii) and (iv)].

72. No registration statement has been filed with the Commission as to any offering of securities by Mine Shaft.

73. Defendants engaged in a general solicitation of Mine Shaft securities and sold securities to investors, not all of which were accredited investors.

## UNREGISTERED BROKER ACTIVITY

74. Nemeckay, Logan, and Whittington are and were neither registered with the Commission as brokers nor associated with entities that were registered with the Commission as brokers during the solicitation of Mine Shaft securities

75. Nemeckay, Logan, and Whittington are or were acting as brokers in connection with the offer and sale of Mine Shaft securities by actively soliciting investors on the behalf of Mine Shaft, including distributing the PPMs.

76. Nemeckay, Logan, and Whittington effected transactions in Mine Shaft securities for investors, including investor funds.

77. Nemeckay, Logan, and Whittington responded to investor inquiries, advised investors on the merits of the investment.

# FIRST CAUSE OF ACTION
## OFFER AND SALE OF UNREGISTERED SECURITIES
**Violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]**
**Against All Defendants**

78. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through XX, above.

79. Defendants Mine Shaft, Nemeckay, Logan, and Whittington, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, or carried such securities through the mils or in interstate commerce, for the purpose of sale or delivery after sale.

80. No registration statement has been filed with the Commission or has been in effect with respect to these securities.

81. By reason of the forgoing, defendants Mine Shaft, Nemeckay, Logan, and Whittington, and each of them, directly or indirectly violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

# SECOND CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE OFFER AND SALE OF SECURITIES
**Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]**
**Against All Defendants**

82. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through XX, above.

83. Defendants Mine Shaft, Nemeckay, Logan, and Whittington, and each of them, by engaging in by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, (1) employed a device, scheme, or

artifice to defraud, (2) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser. By reason of the foregoing, defendants Mine Shaft, Nemeckay, Logan, and Whittington, and each of them, directly or indirectly, violated and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CAUSE OF ACTION**
**FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES**
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b–5]**
**Against All Defendants**

84. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through XX, above.

85. Defendants Mine Shaft, Nemeckay, Logan, and Whittington, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; and/or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

86. By reason of the foregoing, defendants Mine Shaft, Nemeckay, Logan, and Whittington, and each of them, violated and, unless restrained and enjoined, will continue to

violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5].

### FOURTH CAUSE OF ACTION
### OFFER AND SALE OF SECURITIES BY AN UNREGISTERED BROKER OR DEALER
### Violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]
### Against Nemeckay, Logan, and Whittington

87. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through XX, above.

88. Defendants Nemeckay, Logan, and Whittington, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the SEC.

89. By reason of the foregoing, defendants Nemeckay, Logan, and Whittington violated and, unless restrained and enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. 78o(a)(1)].

### FIFTH CAUSE OF ACTION
### VIOLATION OF ASSOCIATIONAL BAR THROUGH ACTING AS A BROKER
### Violation of Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. § 78o(b)(6)(B)(i)]
### Against Nemeckay

90. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through XX, above.

91. Defendant Nemeckay, who has previously been made the subject of an Commission bar from associating with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical ratings organization and from participating in an offering of penny stock, with such previous bar being

in effect, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission (i.e., he acted as a broker in violation of the Commission bar).

92. By reason of the foregoing, defendant Nemeckay violated and, unless restrained and enjoined, will continue to violate Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. § 78o(b)(6)(B)(i)].

**RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Permanently restraining and enjoining each Defendant from, directly or indirectly, engaging in conduct in violation of Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e; 77q(a)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78j(b); 78o(a)(1)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5];

**II.**

Permanently restraining and enjoining Defendant Nemeckay from, directly or indirectly, engaging in conduct in violation of Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. 78o(b)(6)(B)(i)];

**III.**

Permanently restraining and enjoining Defendant Nemeckay from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall

not prevent him from purchasing or selling securities listed on a national securities exchange for his own personal accounts;

### IV.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], unconditionally and permanently prohibit Defendant Nemeckay from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15o(d) of the Exchange Act [15 U.S.C. § 78o(d)];.

### V.

Enter an order directing Defendants Nemeckay and Whittington to disgorge all ill-gotten gains received during the period of violative conduct and to pay prejudgment interest on such ill-gotten gains.

### VI.

Enter an order directing Defendants, and each of them, to pay civil penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

### VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: July 27, 2021

                                                  Respectfully submitted,

                                                  */s/ Casey R. Fronk*
                                                  Casey R. Fronk
                                                  Tracy S. Combs
                                                  Attorneys for Plaintiff
                                                  Securities and Exchange Commission